UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

YOLANDA MCGRAW, individually, and as the representative of all persons similarly situated,

Plaintiff,

v.

GEICO GENERAL INSURANCE COMPANY,

Defendant.

CASE NO. C15-5336 BHS

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

This matter comes before the Court on Plaintiff Yolanda McGraw's ("McGraw") motion to remand (Dkt. 15). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On March 13, 2014, McGraw was involved in a car accident. Dkt. 1, Ex. A ("Comp.") ¶ 1.8. McGraw's car was damaged, and the repairs cost $8,140.07. *Id.* McGraw's car was worth less after it was repaired than before the accident. *Id.* ¶ 1.10.

McGraw had a car insurance policy with Defendant Geico General Insurance Company ("Geico"). *Id.* ¶ 1.9. McGraw sought underinsured motorist coverage under her Geico policy. *Id.* Geico did not compensate McGraw for her car's diminished value. *Id.* ¶ 1.11.

On April 17, 2015, McGraw filed a class action complaint against Geico in Pierce County Superior Court. *See* Comp. McGraw claims that Geico has continuously failed to pay its policyholders' diminished value loss. *Id.* ¶ 5.1. McGraw seeks to certify the following class:

> All GEICO insureds with Washington policies issued in Washington State, where the insureds' vehicle damages were covered under Underinsured Motorist coverage, and
>
> 1. The repair estimates on the vehicle (including any supplements) totaled at least $1,000; and
> 2. The vehicle was no more than six years old (model year plus five years) and had less than 90,000 miles on it at the time of the accident; and
> 3. The vehicle suffered structural (frame) damage and/or deformed sheet metal and/or required body or paint work.
>
> Excluded from the Class are (a) claims involving leased vehicles or total losses, and (b) the assigned judge, the judge's staff and family.

*Id.* ¶ 5.3. McGraw alleges that the number of class members will be about 2,586 and the average damages will be about $1,460 per class member. *Id.* ¶ 2.4. Based on these numbers, McGraw alleges that the amount in controversy is $3,775,560. *See id.* McGraw asserts a single breach of contract claim. *Id.* ¶¶ 6.1–6.5.

On May 20, 2015, Geico removed the action to this Court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Dkt. 1. Geico's notice of removal asserts

that CAFA requirements are satisfied. *See id.* at 2–3. With respect to the amount in controversy, Geico alleges that there is $13,767,800 in controversy. *Id.* at 3.

On June 17, 2015, McGraw moved to remand. Dkt. 15. On August 3, 2015, Geico responded. Dkt. 17. On August 10, 2015, McGraw replied. Dkt. 19.

## II. DISCUSSION

McGraw moves to remand, arguing that Geico has not shown by a preponderance of the evidence that the amount in controversy exceeds CAFA's jurisdictional requirement of $5,000,000.[1] Dkt. 15.

### A. CAFA Removal Standard

"A defendant generally may remove a civil action if a federal district court would have original jurisdiction over the action." *Allen v. Boeing Co.*,784 F.3d 625, 628 (9th Cir. 2015). CAFA vests federal district courts with original jurisdiction over class actions involving more than 100 class members, minimal diversity, and at least $5,000,000 in controversy, exclusive of interests and costs. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 552 (2014) (citing 28 U.S.C. § 1332(d)). A defendant seeking removal under CAFA must file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee*, 135 S. Ct. at 551. The burden of establishing removal jurisdiction remains on the party seeking removal. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685

[1] It is undisputed that this case satisfies CAFA's numerosity and minimal diversity requirements.

(9th Cir. 2006). There is no presumption against removal under CAFA. *Dart Cherokee*, 135 S. Ct. at 554.

**B. Amount in Controversy**

To satisfy CAFA's amount in controversy requirement, the removing defendant must plausibly allege in the notice of removal that the amount in controversy exceeds $5,000,000. *Id.* If the plaintiff challenges the defendant's allegation, the defendant must then establish by a preponderance of the evidence that CAFA's amount in controversy requirement has been satisfied. *Id.* at 554. "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015). Both parties may submit evidence outside the complaint, including affidavits, declarations, or other summary-judgment-type evidence. *Id.* at 1197. "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

In determining the amount in controversy, the Court first looks to the complaint. *Id.* Generally, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab. Co.*, 303 U.S. 283, 289 (1938). In her complaint, McGraw alleges that the amount in controversy is $3,775,560. Comp. ¶ 2.4.

In its notice of removal, Geico alleged that the amount in controversy was $13,767,800. Dkt. 1 at 3. McGraw challenges this allegation in her motion to remand.

Dkt. 15. In response, Geico contends that the amount in controversy could actually exceed $26 million because (1) the proposed class will include at least 3,277 members, (2) the damages will be at least $8,000 per class member, and (3) the amount in controversy should include attorney fees. Dkt. 17 at 7. The Court will address each issue in turn.

**1. Proposed Class Members**

Geico first argues that the number of proposed class members will total at least 3,277. Dkt. 17 at 7. Geico arrived at this number by searching its database for claims involving: (1) Geico insureds with Washington policies; (2) with vehicle damages paid under the underinsured motorist coverage section of their Geico policy; (3) with loss payments totaling at least $1,000; (4) with odometer readings, if available, of less than 90,000 miles; and (5) that were not total losses. Dkt. 17-1, Declaration of David Antonacci ("Antonacci Dec.") ¶ 4. Geico's search resulted in 3,277 claims. *Id.*

As McGraw correctly points out, Geico's search does not track McGraw's proposed class definition. *See* Dkt. 19 at 5. McGraw limits her proposed class definition to only include:

> All GEICO insureds with *Washington policies* issued in Washington State, where the insureds' *vehicle damages were covered under Underinsured Motorist coverage*, and
>
> 1. *The repair estimates* on the vehicle (including any supplements) *totaled at least $1,000*; and
> 2. *The vehicle was no more than six years old* (model year plus five years) and *had less than 90,000 miles on it* at the time of the accident; and
> 3. *The vehicle suffered structural (frame) damage and/or deformed sheet metal and/or required body or paint work*.

> Excluded from the Class are (a) claims involving *leased vehicles* or *total losses*, and (b) the assigned judge, the judge's staff and family.

Comp. ¶ 5.3 (emphasis added). In light of McGraw's proposed class definition, Geico's search does not account for whether the vehicle was "no more than six years old," whether the vehicle "suffered structural (frame damage) and/or deformed sheet metal and/or required body or paintwork," whether "loss payments" includes payments for items other than the cost of repair, or whether the vehicle was leased. *Compare* Antonacci Dec. ¶ 4, *with* Comp. ¶ 5.3. *See also* Dkt. 20, Declaration of Scott Nealey ("Nealey Dec.") ¶ 8. Geico's search also fails to identify what portion of its search sample does not have odometer readings available. Because Geico's search does not incorporate all of the factors that define McGraw's proposed class, Geico's estimated number of class members is flawed.

Meanwhile, McGraw has submitted evidence showing that the number of class members will be no more than 2,305. *See* Nealey Dec. ¶¶ 10–19. McGraw arrived at this number by accounting for the factors that Geico failed to include in its search. *Id.* McGraw also extrapolated data from class sizes in prior cases involving almost identical class definitions. *Id.* Based on this evidence, Geico's estimated number of class members is likely 29.66% too high. *Id.* ¶ 19. On the current record, the Court finds that the number of proposed class members is more likely than not around 2,305.

**2. Damages**

Next, Geico asserts that the average amount of damages will be at least $8,000 per class member. Dkt. 17 at 9. To support this assertion, Geico submits the file notes from

a Geico employee who handled McGraw's coverage claim prior to the filing of this suit. *See* Dkt. 18-1, Declaration of Michael Quesada ("Quesada Dec."), Ex. A. According to the Geico employee, McGraw "felt her [diminution of value] should be 8–9k." *Id.* at 5. The Geico employee told McGraw that he had "never seen a [diminution of value] case for this amount." *Id.*

The Court must test CAFA's amount in controversy requirement by considering "real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. Although Geico has presented evidence that McGraw believed her claim was worth at least $8,000 prior to this suit, Geico has not presented any evidence indicating that $8,000 is a reasonable estimate of the proposed class members' average damages. In the absence of such evidence, Geico's damages estimate is "mere speculation and conjecture, with unreasonable assumptions." *Id.* Indeed, the minimal evidence submitted by Geico indicates that $8,000 per class member is an unreasonable assumption. *See* Quesada Dec., Ex. A at 5 ("[A]dvised [McGraw] I'd never seen a [diminution of value] case for this amount.").

McGraw has submitted evidence showing that the average amount of damages will be $1,460 per class member. Nealey Dec. ¶¶ 21–23, Ex. A. McGraw arrived at this number by extrapolating damages data from a prior case involving an almost identical class definition. *Id.* ¶¶ 3, 23. Based on the evidence in the record, the Court finds that the average amount of damages is more likely than not around $1,460 per class member.

**3. Attorney Fees**

Finally, Geico argues that McGraw's attorney fees should be included in the amount in controversy calculation. Dkt. 17 at 10. Geico's argument rests on the assumption that McGraw's complaint includes claims under the Washington Consumer Protection Act and Insurance Fair Conduct Act, two state statues that provide for the recovery of attorney fees. *See id.* (citing RCW 48.30.015). Under CAFA, the Court may factor attorney fees into the amount in controversy determination where such fees are available pursuant to the statute or statutes underlying the plaintiff's claims. *See Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007), *overruled on other grounds as recognized by Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 976–77 (9th Cir. 2013). McGraw, however, has not pled any statutory violations. *See* Comp. Instead, McGraw's complaint asserts a single breach of contract claim. *Id.* ¶¶ 6.1–6.5. The Court therefore declines to include attorney fees recoverable under statutes that are not pled in McGraw's complaint in the amount in controversy determination.

**4. Remand**

In sum, Geico has failed to establish by a preponderance of the evidence that CAFA's amount in controversy requirement is satisfied in this case. Based on the evidence presently before the Court, the amount in controversy is more likely than not around $3,365,300. This amount falls short of CAFA's jurisdictional requirement of $5,000,000. *See* 28 U.S.C. § 1332(d). Because Geico has not met its burden of

establishing removal jurisdiction under CAFA, the Court grants McGraw's motion and remands this case.

**III. ORDER**

Therefore, it is hereby **ORDERED** that McGraw's motion to remand (Dkt. 15) is **GRANTED**. This action is **REMANDED** to Pierce County Superior Court.

Dated this 8th day of September, 2015.

BENJAMIN H. SETTLE
United States District Judge